


FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2020 FEB -6 PM 12:32

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

**U.S. Department of Justice**
*United States Attorney*
*District of Maryland*
*Northern Division*

| | | |
|---|---|---|
| Harry M. Gruber<br>Assistant United States Attorney<br>Harry.Gruber@usdoj.gov | Mailing Address:<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201 | Office Location:<br>36 S. Charles Street, 4th Floor<br>Baltimore, MD 21201 | DIRECT: 410-209-4835<br>MAIN: 410-209-4800<br>FAX: 410-962-3910 |

December 3, 2019

Jonathan P. Van Hoven, P.A.
One North Charles Street, Suite 1215,
Baltimore, Maryland 21201

    Re:    <u>United States v. Joseph Kukta</u>
           Crim. No. 19-614

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Joseph Kukta (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by December 11, 2019, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to waive indictment and plead guilty to a two count information, which will charge the Defendant in Count One with Interstate Transportation of Stolen Goods, in violation of 18 U.S.C. § 2314, and in Count Two with Tax Evasion, in violation of 26 U.S.C. § 7201. The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

<u>Count One - Interstate Transportation of Stolen Goods</u>

    First, that goods, wares, merchandise, securities, or money were stolen, converted, or taken by fraud;

    Second, that the defendant transported, transmitted, or transferred (or caused to be transported or transmitted) the property in interstate or foreign commerce;

1

Third, that at the time of the transportation or transmission, the defendant knew the property was stolen, converted, or taken by fraud; and

Fourth, that the value of the property was at least $5,000.

Count Two – Tax Evasion

First, that on or about April 15, 2018, the Defendant attempted to evade and defeat the assessment of tax due and owing on his joint income tax return for the calendar year 2017;

Second, the Defendant committed an affirmative act constituting tax evasion described in the ~~Indictment,~~ and
 iNformation

Third, the Defendant acted willfully.

### Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2314 | N/A | 10 years | 3 years | $250,000 or twice the gain or loss from the offense | $100 |
| 2 | 26 U.S.C. § 7201 | N/A | 5 years | 3 years | $100,000 | ~~N/A~~ $100 |



a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

Rev. August 2018

2

    d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses

in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

        i.     The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an Indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and he understands that the charges will be filed by the United States Attorney without a Grand Jury.

Rev. August 2018

until an agreement was made on the sale price. Kukta determined his asking price for the stolen items by researching the stolen products over the internet. Kukta agreed to sell the stolen items to Person A at approximately 50% of the item's retail price. More than 95-98% of the items Kukta sold to Person A were stolen from FedEx.

After settling on a price with Person A, Kukta transported the stolen merchandise and goods using his vehicles and trailers, including his GMC Yukon and Ford F450 (VIN: 1FT8W4DT1HEC84489), from his Delaware storage unit or his Delaware residence to Person B in Maryland. Person B is Person A's father. Kukta delivered the stolen merchandise and goods to Person B at multiple locations in Maryland, including a Salisbury Wendy's Restaurant, a Salisbury Staples, and Person B's residence in Berlin, Maryland. Person B would then store and ship the merchandise and goods in furtherance of resales arranged by Person A. On or about December 28, 2018, Kukta stole goods and merchandise valued at more than $5,000 from FedEx's facility in Seaford, Delaware, sold them to Company A, and delivered the goods and merchandise to Person B in Maryland.

As a result of his sales of stolen goods and merchandise, Kukta received the following payments from 2012 through 2019 from Company A, which was controlled by Person A:

| Payments from Company A to Kukta | | |
|---|---|---|
| Year | # of payments | Total |
| 2012 | 19 | $ 109,520 |
| 2013 | 35 | 204,502 |
| 2014 | 37 | 295,802 |
| 2015 | 44 | 344,988 |
| 2016 | 39 | 307,369 |
| 2017 | 47 | 330,607 |
| 2018 | 38 | 227,585 |
| 2019 | 16 | 63,634 |
| Total | 275 | $ 1,884,006 |

Kukta additionally sold items he stole from the FedEx facility through eBay and Amazon, including an eBay account shared with a family member, an eBay account in his name, and an Amazon account he created.

Kukta engaged in multiple monetary transactions with the proceeds from the stolen merchandise and goods, including among other things, writing an $11,000 check to American Family RV on his USAA Federal Savings Bank Account ending in 1396-1 on or about September 9, 2015. Additionally, on or about March 9, 2018, Kukta transferred $15,000 from his PNC Bank Account ending in 1384 to his PNC Bank Account ending in 1405.

In or about May 2019, a caller to the FedEx Fraud Department warned that Kukta was taking goods from the FedEx facility in Seaford, Delaware. When interviewed by FedEx

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

    a. As to Count One, the parties stipulate and agree that U.S.S.G. § 2B1.1 applies to this offense, resulting in a base offense level of six (6). The parties further stipulate and agree that the offense involved losses that were more than $1,500,000 and less than $3,500,000, resulting in a sixteen (16) level increase in the offense level. The parties further stipulate and agree that the offense level should be increased by two (2) levels, pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offense involved 10 or more victims; and by two (2) levels, pursuant to U.S.S.G. § 2B1.1(b)(15), because the offense involved an organized scheme to steal goods or chattels that were part of a cargo shipment, resulting in a final offense level of **twenty-six (26).**

    b. As to Count Two, the parties stipulate and agree that U.S.S.G. § 2T1.1 and 2T4.1 apply to the Defendant's offense, resulting in an offense level of twenty (20) because the reasonably foreseeable tax loss associated with the Defendant's tax offense and relevant conduct was between $550,000 and $1,500,000. This offense level is increased by two (2) levels pursuant to 2T1.1(b)(1) because the defendant failed to report income exceeding $10,000 in any year from criminal activity, resulting in an adjusted offense level of **twenty-two (22) for Count Two.**

    c. The parties further stipulate and agree that pursuant to U.S.S.G. § 3D1.2(d), Counts One and Two are grouped together, and that pursuant to U.S.S.G. § 3D1.3(a), the highest offense level of the counts in the Group shall be used. In this case, this results in a combined applicable offense level of **twenty-six (26).**

    d. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii)

Rev. August 2018

denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

7. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income. If the Defendant's criminal history category is criminal history category III or higher, the Defendant reserves the right to seek a downward departure based on overrepresentation of criminal history. The government reserves the right to oppose any downward departure.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

9. At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). The defendant and his counsel must provide the U.S. Attorney's Office with any information that will be used and/or relied upon at sentencing no less than fourteen (14) days prior to sentencing. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing.

## Waiver of Venue

10. The Defendant understands that he would have a right to challenge the prosecution of Count Two in the District of Maryland based on whether he committed such acts in Maryland so as to give rise to venue in this District. The Defendant hereby waives any and all objections he has or may have to venue in the District of Maryland for the tax offense set forth in Count Two, and agrees that his tax offense should be resolved in this District.

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute, to the extent that such challenges legally can be waived.

i. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742, or otherwise, to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

b. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

12. The Defendant understands that the Court will enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture will include assets directly traceable to the offense in Count One, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense, including a sum of money equal to the value of the proceeds of the offense, which amount is **at least $1,880,000**. If specific direct or substitute assets are forfeited and liquidated, any net proceeds of the asset shall be applied to the money judgment.

13. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant also agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

a. A 1970 Ford Bronco bearing Delaware license plate 00277073, Vin No. U15GLH20637; and

b. Real property located at 33167 Forest Knoll Drive, Laurel, DE 19956.

c. The parties hereby stipulate and agree that the forfeiture of the real property located at 33167 Forest Knoll Drive, Laurel, DE 19956, shall be null and void if the Defendant delivers a check in the amount of $50,000,

made payable to Treasury Department – Internal Revenue Service, on or prior to the date of sentencing in this matter.

14. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Restitution

17. The Defendant agrees to the entry of a Restitution Order for the full amount of the actual losses associated with Count One, which the parties stipulate is **at least $3,250,000**. The Defendant agrees that, pursuant to 18 U.S.C. § 3663 and 3663A and § 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. If restitution is not paid by the date of sentencing, the Defendant further agrees that the Defendant will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Tax Liability & Restitution

13. Pursuant to 18 U.S.C. § 3663(a)(3), the defendant agrees in connection with his offense in Count Two, to make restitution to the Internal Revenue Service (hereinafter "IRS") in the amount of $660,439, plus interest that will have accrued on that amount as measured from the date that each tax liability constituting that amount initially became due and owing to the IRS up

Rev. August 2018

to and including the date of sentencing. This amount is in addition to the restitution due and owing in connection with Count One of the Information. The defendant acknowledges and agrees that the amounts referred to herein are negotiated amounts for plea purposes only and do not legally bind or foreclose separate administrative or civil claims by the IRS related to the conduct that is the subject of this plea agreement. The parties agree that this agreement, and any payment under this agreement, will not constitute a settlement, waiver, or release by the IRS of any civil or administrative rights or remedies it may have against the defendant. If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly or indirectly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. See 26 U.S.C. Section 6201(a)(4). The defendant concedes that he does not have the right to challenge the amount of this assessment. See id. Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. Section 6331.

14.     The defendant understands that this agreement does not resolve any civil tax liability that he may have, and that this agreement is with the United States Attorney's Office, not with the IRS. The IRS is not a party to this agreement and remains free to pursue any and all lawful remedies it may have. The defendant agrees to cooperate fully with the IRS in the determination of his tax liability and the tax liablity of any business that he has owned or controlled, and specifically agrees:

    a.     that nothing in this agreement forecloses or limits the ability of the IRS to examine and make adjustments to the defendant's returns after they are filed;

    b.     that the defendant is liable for the civil fraud penalty imposed by 26 U.S.C. Section 6651(f) with respect to the Form 1040 tax returns filed by him and his spouse for the tax years 2012-2018; and

    c.     that the contents of any criminal file pertaining to his conduct maintained by the Criminal Investigation Division of the IRS and/or the U.S. Attorney's Office/Department of Justice may be given to civil attorneys, agents and support staff of the IRS to enable them to investigate any and all civil taxes and penalties that may be due and owing by the defendant and any entity formed or controlled by the defendant. To the extent necessary to effect such disclosure, the defendant waives any rights he may have pursuant to 26 U.S.C. Sections 6103(h)(4), 7213, and Federal Rule of Criminal Procedure Section 6(e).

### Collection of Financial Obligations

18.     The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. If restitution is not paid by the date of sentencing, in order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant

exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. If restitution is not paid by the date of sentencing, the Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that any financial statement and disclosures the Defendant submits will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Defendant's Conduct Prior to Sentencing and Breach

19. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.

### Court Not a Party

21. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

22. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours.

Robert K. Hur
United States Attorney

Harry M. Gruber
Paul Riley
Assistant United States Attorneys

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/9/19
Date

Joseph Kukta

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12/10/19
Date

Jonathan Van Hoven, Esq.

Rev. August 2018

11

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2020 FEB -6 AM 11: 32

CLERK'S OFFICE
DEPUTY

## ATTACHMENT A

## STIPULATION OF FACTS

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

Defendant Joseph Kukta worked as a Senior Manager at the FedEx facility located in Seaford, Delaware ("the FedEx facility") during the time period 2007 to July 30, 2019. The FedEx facility handled all FedEx Ground and FedEx Home Delivery packages passing through the Delmarva Peninsula, stretching from Smyrna, Delaware to Pocomoke City, Maryland and from the Chesapeake Bay to the Atlantic Ocean. As the most senior employee at the FedEx facility, Kukta oversaw all operational aspects of the facility and also supervised over 100 employees and contractors. From 2012 to the present, Kukta earned an annual salary from FedEx exceeding $92,000 each year.

Beginning in or about 2009 and continuing until in or about June 2019, Kukta stole packages shipped via FedEx and intended for delivery to a Walmart Distribution Center in Smyrna, Delaware. The packages contained bulk retail goods and merchandise shipped by various Walmart suppliers including Sony Electronics, Panasonic, Apple, Quten Research Institute, Equate and others. Beginning in or about 2012, Kukta's theft of packages from the FedEx facility became frequent and consistent, including on a weekly basis in certain months. Kukta identified packages he would steal by accessing FedEx computer systems and reviewing packages indicated as having been loaded onto a FedEx trailer awaiting delivery to the Walmart Distribution Center. Kukta would then select specific packages which he believed, based upon the shipper of the package, contained high-end electronics or other merchandise of value that could be easily resold. In or about 2018, Kukta began to also steal packages from FedEx trailers set for delivery to a Nike store in Rehoboth Beach, Delaware.

Kukta went to the FedEx facility on Sundays, holidays, or other times when employees were not at the facility, and removed the packages he previously identified from the FedEx trailers set for delivery to Walmart and/or Nike. Kukta attempted to avoid detection by turning off the lights at the facility and blocking certain surveillance cameras with cardboard boxes and other objects. Kukta loaded the stolen packages into his GMC Yukon (VIN: 1GKS2HE35BR194063) or into vehicles operated by FedEx contractors and parked at the FedEx facility. Kukta then drove the vehicles containing the stolen packages to his rented storage unit in Seaford, Delaware. On occasion, Kukta also stored stolen packages in vehicles or trailers parked at his residence in Laurel, Delaware.

After stealing the packages from FedEx trailers and transporting them from the FedEx facility to his storage unit, Kukta compiled an inventory of the items contained within the stolen packages. Kukta additionally removed FedEx labels from the boxes and also re-boxed smaller items into larger boxes. Kukta would then email Person A, who presently lives in Colorado, and offer to sell the stolen goods and merchandise. Kukta and Person A would negotiate via email

security personnel pursuant to an internal investigation, Kukta denied taking any merchandise and continued stealing packages from the FedEx facility later in May 2019.

On or about June 5, 2019, Kukta learned from FedEx/its agents that a subpoena had been issued by law enforcement for surveillance footage from the FedEx Seaford facility. Approximately two weeks later, Kukta went to his Seaford storage unit, retrieved the remaining items he had previously stolen, and sold the remaining stolen merchandise and goods at an auction house in Lincoln, Delaware.

Kukta stipulates that for tax years 2012-2018, he knowingly and willfully evaded and defeated the paying of income tax by failing to report more than the amounts listed in the charts above on his annual joint income tax returns, Forms 1040, filed with the Internal Revenue Service ("IRS"). Kukta further admits that his joint income tax returns for these years caused a tax loss to the United States of $660,439. For example, for the 2016 tax year, Kukta failed to report $306,553 in gross receipts from sales of stolen items, resulting in a tax loss of $117,093. Similarly, for the 2017 tax year, Kukta failed to report $321,846 in gross receipts from sales of stolen items, resulting in a tax loss of $124,932.

Kukta's attempts to evade accurate income tax assessments involved, among other things, his decision to provide false information to USAA Federal Savings Bank in or about December 2015 and PNC Bank in or about August 2017. Kukta provided false information because the banks were questioning the reason why Kukta was receiving funds from Company A. As to each financial institution, Kukta falsely told bank representatives that he had been selling items from his Father's estate when he then and there knew that was false. Moreover, during an IRS examination of his 2014 tax returns, Kukta provided false information to the IRS, claiming that the items he had sold on eBay during 2014 stemmed from his Father's estate vs. the sale of stolen goods.

Overall, the Defendant stipulates that he received more than $1,880,000 in illegal proceeds for selling stolen goods that were worth at least $3,250,000.

**SO STIPULATED:**

_____
Harry M. Gruber
Assistant United States Attorney

_____
Joseph Kukta
Defendant

_____
Jonathan Van Hoven, Esq.
Counsel for Defendant